POLK MUSICAL SUPPLY CO. v. UNITED STATES[1]

United States Customs Court, Third Division

(Decided October 20, 1938)

*Ben H. Berry* for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

[1] C. D. 52.

CLINE, Judge: These are suits against the United States, arising at the port of Atlanta, Ga., to recover addditional duty claimed to have been assessed improperly at the rate of 10 per centum ad valorem under the provisions of section 304 (b) of the Tariff Act of 1930.

These cases are now before us on rehearing. The cases were originally decided in *Polk Musical Supply Co.* v. *United States*, T. D. 49323, favorably to the plaintiff's contention but within thirty days thereafter the defendant filed an application for rehearing which was granted. The character of the merchandise and the method of marking was described in our former decision as follows:

At the trial a sample of the imported gramophones was introduced in evidence and marked "Exhibit 1." It consists of a portable gramophone in which the motor is securely fastened into a case having an attached handle. The case and the machinery of the motor constitute an entirety. It is a complete gramophone. It is also shown by the record that each gramophone was contained in a cardboard carton, a sample of which was introduced in evidence and marked "Exhibit 2." Ten gramophones in cartons were imported in each wooden packing case.

The merchandise was imported from Japan and the words "Made in Japan" were stenciled on the outside of the wooden packing cases. There was no marking on the cartons to indicate the country of origin of the gramophones. A metal plate or tag containing the words "Made in Japan" was securely attached to each gramophone under the edge of the turntable or disc upon which the records are placed when the gramophone is in use. It is possible to see this metal plate by looking sidewise under the turntable of the gramophone, but the words printed thereon can not be deciphered or read while the turntable is in position. In order to remove the turntable and thus expose the metal plate containing the marking, all that is necessary is to unscrew and remove a metal tap in the center of the turntable and lift up the disc. The record shows that the turntable or disc is a part of the motor and that it is often removed by the owner, jobber, and the consumer who purchases it. On this point the manager of the importing concern testified:

It is removed in traveling, and is quite often removed to allow the adjustment of this machine. It is removed for many purposes.

In the original decision the court sustained the protests, basing its holding that the goods were legally marked on a former ruling in the case of *Biddel Purchasing Co.* v. *United States*, 68 Treas. Dec. 1114, Abstract 32466, covering citron in cardboard boxes. The citron was incapable of being marked but the cardboard boxes were legally marked. However, the cardboard boxes were wrapped in transparent cellophane and a label attached to the cellophane covered the marking on the cardboard boxes, but before the citron could be used the cellophane wrapper would necessarily have to be removed, thus exposing the label on the cardboard box. The court held that the immediate containers of the citron were legally marked.

In defendant's application for rehearing, counsel distinguished the *Biddle Purchasing Co.* case, *supra*, by showing that in said case the

marking was on the immediate containers, whereas in the case now before the court the marking which the plaintiff claims to be sufficient is on the article itself.

Upon further consideration, we are of opinion that, as the marking on the gramophones is not legible in the condition as imported, the articles were not marked in a conspicuous place within the statutory specifications. Accordingly, we hereby reverse our former decision, published in T. D. 49323, insofar as it relates to the marking on the article. We adhere to our former finding that the cardboard cartons were the immediate containers of the gramophones, and, as neither the articles nor the immediate containers were legally marked when imported, we hold that the collector was justified in assessing the additional duty at the rate of 10 per centum ad valorem under the provisions of section 304 (b) of the Tariff Act of 1930. The protests are overruled. Judgment will be entered in favor of the defendant.